I know that counsel were on the 17th floor arguing another case, and so I'm glad that you're all here and ready to proceed, and we did understand that you might be delayed, but glad you're all here. Attorney Stein, you have reserved two minutes for rebuttal. Thank you very much. Thank you. Good morning, and may it please the court. My name is Daniel Stein. I was appointed under the Criminal Justice Act to represent Mr. Colello. I was appointed in the district court after trial and continued with that appointment on appeal. I'd like to spend my time this morning focusing on what I believe are the core issues of our argument. I think the briefs that were filed, frankly, by both sides, but I'll compliment the government's brief as being comprehensive and thorough, both in terms of reviewing the record and citing authorities, and I don't intend to rehearse or rehash the arguments made in the briefs. I don't see any real disputes about the standard of review or the legal standards. This case, as I read the briefs, seems to really be a dispute about how the significance of the record and how this court should review that record. And what I want to emphasize is that at its core, at least with respect to count one, we are not here, that's the wire fraud conspiracy count, arguing for innocence or arguing insufficient evidence. Sometimes — Well, you are arguing insufficient evidence as to the conviction for the aggravated identity. I was focused on count one. Rather, the claim we're advancing on count one is that the trial was unfair because Mr. Colello did not receive the effective assistance of counsel. It is hard to do justice in a brief to the full scope of what occurred. The ineffective assistance of counsel claim seems to be tied to the Brady issue and the denial of the motion for a new trial based on the government's purported Brady violations. And my question is this. In looking through the record, there were letters that your client sent to the court after his conviction where he references his lawyer, his trial lawyer, the one he now claims is ineffective, having alerted him to the Brady violations even before, I believe even before sentence. There's some reference to it. And my question is this. Why should we address ineffective assistance at this stage? It seems like it could benefit from further inquiry into who knew what when because it's not clear to me that this Brady claim that has now surfaced wasn't known, at least by prior counsel. But we don't know when, when counsel told your client. So why should we decide that at this stage? So it's an excellent question, Your Honor. On the premise of the question, I believe there were two counsel appointed after trial. So I was appointed after another lawyer had been appointed post-trial. Right. I believe it was that second lawyer who was the one that pointed out the Brady issue to Mr. Colello. Well, maybe I'm misreading the letter submitted to the court, but I thought his comment was his trial lawyer made him aware of this. But again, you've just proven my point. Shouldn't there be some factual gathering about what counsel knew and whether, you know, there's, this court disfavors addressing issues of ineffective assistance on direct appeal if the record hasn't been fully developed. If, you know, I know you're not the trial counsel, so that's not an issue. But the second part of when we should or shouldn't address it. Understood, Your Honor. What I would say is there are, as the court knows, there are circumstances, exceptional circumstances where the court may review for ineffective assistance on direct appeal. Our argument on ineffective assistance was not limited to the Brady issue. It was more comprehensive and involved making an argument at his closing argument, a single argument in closing that was foreclosed by the law as he was told by the district court before it was foreclosed. We have a client that is in custody who has a release date that is in the near future and was eager to present this issue now on direct appeal where he could still receive the remedy. And I understand that. It was just a question. But having asked that, and I don't want to take up all the time, my colleagues may have questions for you on the other issues, whether it be the sufficiency of the aggravated identity theft conviction, the sufficiency of evidence or the Brady. I don't know if you want to turn to those. But I don't want to tell you what to do. If you want to keep on the ineffective assistance, please, by all means. The only point I will make, I have nothing further to address on count two and we'll rest on our submission on the sufficiency point. The only point I would make on the Brady argument is much of the district court's reasoning seemed to have been focused on its conclusion that the evidence was overwhelming in the district court's words as cited by the government. What we would argue is not that – it's not as if one single piece of evidence – the test for Brady can't be that this one piece of evidence is what overturns everything else. That the core of the argument we would ask the court to consider in reviewing the record is that Mr. Colello's position could have been at trial. Not that no fraud occurred, not that he was not involved with these people, but that he was an unwitting person who was brought into a scheme by others who were involved in fraud. And that was part of his defense, correct? I don't think it was developed much at trial. As you think it should have been. Correct. But let me ask you, in terms of the Brady material, we're talking about the civil complaint that named the victim and Petron, the victim, the alleged victim's company, in this underlying scheme. And the plea by an uncharged co-conspirator, many years – well, the guilty plea to a similar offense that allegedly occurred many years earlier, but he was indicted and then pled guilty. My question is, why is that information suppressed when it's publicly available? I mean, there was a press release when he was charged. So counsel could have – now, that may very well lead to your ineffective assistance. Correct. But who knew what when, but that was disclosed, correct? No, that was not disclosed. In the 3500 material, there was a reference that the government ran a rap sheet. We don't still – We have a copy of something on page A162 of the record. He pled in 2023, but there is an email dated May 23. It's been redacted, so we don't have the original. It appears to be the rap sheet. I know from the public record that the plea may have been sealed, the plea out in California. But are you saying that the government didn't disclose in the rap sheet that he had been charged? Correct. I believe the government's position has been that for some reason they didn't discover the plea. Not the plea. I'm not talking about the plea. I'm talking about the charge. I get that they didn't discover the plea because that was sealed, reasons why one can speculate but we shouldn't. But I'm asking about the plea itself, the charges, which happened at least two years before that and happened before trial. So the charge itself should have been on a rap sheet. Are you saying that your client didn't receive that? Yes, that's what we're saying. And the government has said, I believe, and they'll speak in a moment, that for some reason which has never been explained to us, the rap sheet did not reveal that charge and so it wasn't in their possession. Thank you. Okay, thank you. May it please the court. My name is Thomas John Wright and I represent the government on this appeal as I did in the district court below through trial. Your Honor, to pick up on the point that you just raised, and I want to focus with the court on the Brady-related issues to be certain. In our brief, Your Honor, on page 44, we explain with respect to the issue of Tommy Watts and the criminal proceedings in the Central District of California, that indeed the government had, prior to trial, made a request for the criminal history of Watts. Those records, however, Your Honor, as we stated in the district court below and now on appeal before this court, did not contain any indication of Watts' recent prosecution in that case. The charges or the plea? Anything, Your Honor. The existence of a case. And the government has no ability to explain that fact. It simply is not present in any way in that document. And so when that criminal history was run a short time prior to trial, it provided no indication of the existence of charges, disposition, any preceding whatsoever in the Central District of California. And it's for that reason, Your Honor, as we argue, that not only, as Judge Rakoff himself found, was this information not exculpatory, it was also not suppressed as to the Tommy Watts issue. Because it wasn't in your control despite best efforts. But how can you then argue that, hey, they should have known about it because it was publicly available when you couldn't find it? Your Honor, it's a fair point. Although within the scope of this area of the law, we are under no duty to conduct an investigation. To be certain, in this instance highlights that we did conduct an investigation. It's just that that investigation, again, for whatever reason, the criminal history that was provided and run did not contain this information. The fact that it separately is publicly available is a completely separate but legally sufficient argument. I mean, there was a press release that's in the – so obviously it wasn't a hidden fact that he had been charged. It was not a hidden fact in the sense that it was publicly available, Your Honor. It was just not known or otherwise in the possession of the government or its prosecution team. Was he – he was never called as a witness by the government or by the defense for that matter? Correct, Your Honor. Your Honor, I think that the other aspect of the Brady claims that is important to focus upon, the second point relating these civil proceedings in the state of Wisconsin. Again, there the court below, Judge Rakoff, made a point of emphasizing that, again, it was not even clear how that information would have been exculpatory in the sense that it had any impeachment value whatsoever. And furthermore, to the suppression point, Your Honor, as was made clear on the record below as well as in our brief, the knowledge of that existing case was not one that the government possessed. And indeed, what evidence there is available – and it's a limited record, as Your Honor highlighted – what evidence is available would suggest that Floyd Smith, the witness to whom that proceeding related, was himself only served with process in that case after his testimony and indeed after the trial in this case had concluded. So there's no reason to believe that anyone, let alone even the witness himself, had knowledge of that case at the time that this case proceeded to trial. So there's no indication that sometimes before people are sued they get a notice of claim or a letter demanding money, but you're saying there's nothing in the record to suggest that the individual, in this case the owner of Petron, even knew he was going to be sued before the trial occurred in this case, before his testimony, during his testimony. It wasn't until after the trial? Correct, Your Honor. And, Your Honor, I think that the other point that is obviously apparent and significant in the space of the Brady claims, and it's one that Judge Rakoff himself relied upon and relied upon, obviously, quite forcefully, when in his decision he reviewed the record and found that the evidence of the defendant's guilt was, quote, and, quote, that the government's case, consisting of 15 witnesses and numerous documentary exhibits, was so strong that the jury returned a guilty verdict on both counts after only about two hours of deliberation. And I think that the significance, obviously, within the scope of these Brady claims to that issue is, is that neither was the evidence as to either Tommy Watts or the Wisconsin State Court proceedings in any way of sculpatory or of impeachment value that was material. They were not suppressed by the government, as neither was in the possession in any literal or constructive sense of the government. And, moreover, if all of those things contrary had been true, it was not possible to find a way in which it would have in any way resulted in some kind of a prejudice to the defendant. And I think that for those reasons, those claims, Your Honor, are squarely foreclosed on the record that's before this court, as was the case, obviously, in the district court. And on these claims, of course, the court is reviewing the denial of a new trial under federal rule of criminal procedure 33 in the context of Brady for an abuse of discretion and must further accept the findings of fact in Judge Rykoff's carefully reasoned, written decision, unless they are clearly erroneous. And we respectfully submit that on this record, as I've just detailed, that is not the case and it would not be possible. And does the government wish to take a position on the, whether the ineffective assistance of counsel is, could be adequately addressed on the current record? Your Honor, we certainly agree with the court that it is impossible on this record to reach a decision that the defense counsel's performance was, as a matter of constitutional law, deficient. And that is because there simply is not a record before the court that would allow it to conduct that inquiry. As this court knows very well, the benefits that a district court has, having borne witness to the proceedings and observed counsel interact with those proceedings and before the court, are difficult to reanimate on a cold record. And frankly, statements that can be cherry-picked and taken from a record can be done so out of context. With that said, Your Honor, I think the only way, and to emphasize, we agree with the court's previously expressed view, the only way that this court would be in a position to decide the ineffective assistance claim on appeal would be by looking at the issue of prejudice. And to be certain, the government's position, in light of what I've just cited in terms of the district court's own view of the evidence in this case, is that there is no review of the record at trial here that would permit a finding of prejudice, regardless of what the status of the defense counsel's performance was. And that is because this was a case, as Judge Roykoff expressly found, in which the combination of evidence, e-mails attributable without possible argument to the defendant, using modes of communication in terms of e-mail that are themselves associated with fraud and duplicity, trafficking in multiple aliases with multiple participants in this fraudulent scheme, telephone records, and most significantly, bank records, that I'll emphasize leave the defendant in this case in a position of being unable to argue that he was not in full and complete knowledge of the fact that his receiving, for example, in connection with the second surety bond in this case, over $100,000 of a premium payment, that is a premium payment that was going to pay for an insurance product, in that case the defendant received over $100,000 as a financial advisor from a premium payment for an insurance bond. There's simply no explanation in the economic real world that could possibly explain that fact away. And it left counsel in this case, setting aside the record that we cannot reanimate of whatever his judgment or strategic choices were, left him in a place where there were no arguments to make as to the defendant's innocence when he had been receiving actual payments that were communicated in writing and in testimony-animated communications otherwise was intended to be the premium for an insurance product. And we respectfully submit that on that record, this court could decide the ineffective assistance of counsel claim based on the inability to prove the prejudice prong, but very much agree with the court that there is not a record before the court that would permit it to adequately address the issue of the performance of counsel under the first prong of Strickland. And if the court has no further questions, I can send it there. Seeing none, thank you, counsel. Attorney Stein, you have reserved two minutes for rebuttal. Yes, thank you, Your Honor. I only wish to address one of the points made by counsel, specifically the comment that, citing the district court, that the information about the civil lawsuit couldn't possibly have been exculpatory. I frankly am, I don't understand the argument. To me, it seems clear, and I just would offer as the court reviews the record, that when the principal witness has been accused of similar conduct in which Mr. Colella was not involved, he has a natural incentive to curry favor with prosecutors, which could have been explored on the- Well, it's certainly impeachment material. Yes. But I understood the government's primary position to be even the witness himself didn't know he was going to get sued. So how can the government have suppressed information that he didn't know he was summoned after, he was sued after, and the government, how can the government, you know, have a crystal ball, they know he's going to get sued? I thought that was their argument. Do you disagree with that, that the summons in the service of the complaint was after the trial occurred? I think we don't know exactly when the summons were served. I think it's a gap in the record, and I think the way we presented it in the district court and the way I think Judge Rakoff analyzed it was about a duty to inquire of the witness. Right. And I don't contend that it was in the government's possession, but I simply wanted to address, to the extent there's an argument that this could not have been impeachment or exculpatory evidence, I think that that's not doubt. Thank you. Thank you, counsel. Thank you to both sides. We will reserve decision on this matter, and I believe that concludes the oral arguments for today.